UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHARLES E. RAAD

          Plaintiff,

  vs.

CHRISTIAN ITIN, PETER JOHANN,
JOSEPH P. SLATTERY, DAVID F.
HALE, MICHAEL G. CARTER,
JOHN E. BERRIMAN, KAPIL
DHINGRA, MICROMET, INC.,
SUITE 400
9201 CORPORATE BLVD
ROCKVILLE, MD 20850


AMGEN INC. AND ARMSTRONG
ACQUISITION CORP.,
One Amgen Center Drive
Thousand Oaks, California 91320-1799
             Defendants.

CIVIL ACTION NO.


Class Action Complaint For
Violations Of The Federal Securities
Law and State Law Claims

**JURY TRIAL DEMANDED**

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## CLASS ACTION COMPLAINT

1.     This is a stockholder class action brought on behalf of the public stockholders of

Micromet, Inc. ("Micromet" or the "Company") against the Company's Board of Directors (the

"Board") for breaches of fiduciary duty arising out of Defendants' decision to sell the Company

to Amgen Inc. and its wholly-owned subsidiary Armstrong Acquisition Corp. (collectively

"Amgen") at an inadequate and for an unfair price following a grossly unfair process (the

"Proposed Merger") pursuant to an Agreement and Plan of Merger between Micromet and

Amgen dated as of January 25, 2012 (the "Merger Agreement").

2.     Plaintiff alleges that the sale of Micromet to Amgen contemplated by the Merger

Agreement is unfair and inequitable to the Micromet public stockholders and constitutes a breach

1

of the fiduciary duties of the Mircomet's Board.  Plaintiff also alleges that the Merger Agreement and transactions approved and contemplated thereby, including the Tender Offer, are unfairly and inequitably coercive to the public stockholders in a sale of the Company and that the stockholders are not provided with a voluntary choice whether to tender their shares.

3.     The Merger Agreement contemplates, among other things, a tender offer by Amgen for all Micromet shares at $11.00 per share (the "Tender Offer"), a so-called "Top-Up Option" giving Amgen the right to buy additional new Micromet shares at $11.00 to give Amgen 90% ownership, and a short-form merger at $11.00 per share by virtue of the tendered shares plus the additional new shares.

4.     The Tender Offer commenced on February 2, 2012, and is set to expire on March 1, 2012, unless extended in accordance with the terms of the Merger Agreement.

5.     The Micromet Board has unanimously recommended that Micromet stockholders tender.  Concurrently with the execution of the Merger Agreement and as a condition to Amgen's willingness to enter into the Merger Agreement, Amgen entered into tender and support agreements, dated as of January 25, 2012, with the directors of the Company, pursuant to which each director, in his or her capacity as a stockholder of the Company, has agreed to, among other things, (1) tender his or her shares of the Company common stock in the Tender Offer, (2) provide Amgen with an option to purchase any shares of the Company common stock held by such individuals that are not tendered in the Tender Offer, (3) vote his or her shares of the Company common stock in favor of the Merger, and (4) refrain from disposing of his or her shares of the Company common stock and soliciting alternative acquisition proposals to the Proposed Merger.  The directors also granted Amgen a proxy to vote any shares of the Company common stock held by such individuals in favor of the Proposed Merger.

2

6.     The consideration to be paid to the class members is unfair and grossly inadequate because, among other things: (a) the intrinsic value of the stock of Micromet is materially in excess of $11.00 per share, giving due consideration to the possibilities of growth and profitability of Micromet in light of its business, earnings and earnings power, present and future; (b) the $11.00 per share price offers an inadequate premium to the public stockholders of Micromet; and (c) the $11.00 per share price is not the result of arm's-length negotiations but was fixed arbitrarily by certain insiders and Amgen to "cap" the market price of Micromet stock, as part of a plan for Amgen to obtain complete ownership of Micromet assets and business at the lowest possible price.   Indeed, the recent historical averages for Micromet's stock price demonstrate that the consideration being offered by Amgen is unfair and inadequate.

7.     Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Merger with deal protection devices that preclude other bidders from making a successful competing offer for the Company.   Specifically, Defendants agreed to: (i) a no-solicitation provision that prevents other buyers from having access to the Company's confidential information which information is necessary to formulate a bid, except under extremely limited circumstances; (ii) a matching rights provision that allows Amgen 4 business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay Amgen a termination fee of $40 million.   These provisions limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of Micromet.

8.     The Proposed Merger serves no legitimate business purpose for Micromet but rather is an attempt by defendants to enable Amgen to benefit unfairly from the transaction at the expense of Micromet's public shareholders.   The proposed cash-out transaction will forever

divest Micromet public shareholders of their ownership interest in the Company for grossly inadequate consideration.  As such, the Proposed Merger will deny Plaintiff and the other members of the class their right to share proportionately in the future success of Micromet and its valuable assets, while permitting certain Micromet insiders and Amgen to reap huge financial benefits from the transaction.  Accordingly, judicial scrutiny of the Proposed Merger is necessary to ensure that the best interest of all Micromet shareholders, and not the interests of the defendants, was the basis for the Micromet Board decision to enter into the Proposed Merger.

9.     On February 2, 2011, Micromet filed a Schedule 14D-9 (the "14D-9") with the Securities and Exchange Commission ("SEC") in connection with the Proposed Merger pursuant to which, *inter alia*, the Micromet Board recommended that Micromet stockholders tender their shares in favor of the Tender Offer.  In connection with the 14D-9, defendants have breached their duty of candor by failing to disclose material information to 14D-9 shareholders necessary for them to determine whether to vote in favor of the Proposed Merger.

10.     In entering into the Merger Agreement, each of the Defendants violated and continues to violate applicable law by directly breaching and/or aiding and abetting the defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.

11.     As alleged herein, the Proposed Merger is the product of a hopelessly flawed process that was designed to sell Micromet to Amgen on terms detrimental to Plaintiff and the other public stockholders of Micromet.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over the subject matter of this action.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not

otherwise have.  The claims asserted herein arise under Section 14(e) of the Securities Exchange Act, 15 U.S.C. § 78aa.  This Court has jurisdiction pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §§ 1331, 1367.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2) (2008) because the Company is headquartered in this District and a substantial portion of the transaction and occurrences complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, occurred in this District.  In addition, one or more of the Defendants either resides in or maintains executive offices in this District.

## PARTIES

14.     Plaintiff is and has been at all relevant times a shareholder of Micromet.

15.     Micromet is a Delaware corporation with its principal place of business located 9201 Corporate Boulevard, Suite 400, Rockville, Maryland 20850.   Micromet, a biopharmaceutical company, engages in the discovery, development, and commercialization of antibody-based therapies for the treatment of cancer.  Its product development pipeline includes novel antibodies generated with its proprietary BiTE antibody platform, as well as conventional monoclonal antibodies.  The Company's lead product candidate blinatumomab, MT103, is in Phase II clinical trial for the treatment of patients with acute lymphoblastic leukemia, as well as in Phase I clinical trial for the treatment of patients with non-Hodgkin's lymphomas.  Its Phase I clinical trial products comprise MT110 and MT111 for the treatment of solid tumors; and MT203 for the treatment of various inflammatory and autoimmune diseases, such as rheumatoid arthritis, psoriasis, or multiple sclerosis.  The Company's products in preclinical stage comprise MT112 for the treatment of solid tumors; and other BiTE antibodies, including adecatumumab, known as MT201, for the treatment of solid tumors and mltiple myeloma.  Micromet has

5

collaborations with various pharmaceutical and biotechnology companies, including Amgen, Bayer HealthCare Pharmaceuticals, Boehringer Ingelheim, MedImmune, Nycomed, and Sanofi. The Company is headquartered in Rockville, Maryland. As of November 1, 2011, Micromet has 92,056,901 shares of common stock outstanding. The Company's stock trades under the symbol "MITI" on the NASDAQ.

16.     Defendant Christian Itin ("Itin") is and has been at all relevant times the Chief Executive Officer of the Board of Micromet since May 2006. He has served as a director of the Company since 2006.

17.     Defendant Peter Johann ("Johann") is and has been at all relevant a director of the Company.

18.     Defendant Joseph P. Slattery ("Slattery") is and has been at all relevant times a Director of Micromet since November 2007.

19.     Defendant David F. Hale ("Hale") is and has been at all relevant times a director of Micromet since 2006.

20.     Defendant Michael G. Carter ("Carter") is and has been at all relevant times as a director of Micromet since 2001.

21.     Defendant John E. Berriman ("Berriman") is and has been at all relevant times a director of Micromet since 2006.

22.     Defendant Kapil Dhingra ("Dhingra") is and has been at all relevant times a director of Micromet since February, 2009.

23.     The Defendants named in ¶¶ 16-22 are sometimes collectively referred to herein as the "Individual Defendants."

24.     Defendant Amgen, incorporated in Delaware, a biotechnology medicines company, discovers, develops, manufactures, and markets human therapeutics based on advances in cellular and molecular biology for grievous illnesses primarily in the United States, Europe, and Canada.   Amgen markets recombinant protein therapeutics in supportive cancer care, nephrology, and inflammation.   Its principal offices are located at One Amgen Center Drive Thousand Oaks, California 91320-1799.   Amgen's stock trades under the symbol "AMGN" on the New York Stock Exchange.

25.     Defendant Armstrong Acquisition Corp. ("Armstrong"), a Delaware corporation, was organized as a wholly-owned subsidiary of Amgen for the sole purpose of making a tender offer for the outstanding shares of common stock of Micromet and completing the Merger.

26.     Defendants Amgen and Armstrong are collectively referred to herein as "Amgen", and are named herein as aiders and abettors to the Individual Defendants' breaches of fiduciary duty.

## CLASS ALLEGATIONS

27.     Plaintiff brings this action individually and as a class action pursuant to the rules of this Court, on behalf of all stockholders of Micromet, except Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants, who are threatened with injury arising from Defendants' actions as is described more fully below (the "Class").

28.     This action is properly maintainable as a class action.

29.     The Class is so numerous that joinder of all members is impracticable.

30.     There are more than 92 million shares of Micromet common stock outstanding held by thousands of shareholders geographically dispersed across the country.

31.     There are questions of law and fact which are common to the Class including, inter alia, the following:

(a)     whether Defendants have breached and are continuing to breach their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Merger; and

(b)     whether Plaintiff and the other members of the Class would suffer irreparable injury were the transaction complained of herein consummated.

32.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

33.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

34.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

35.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### *Collaboration Agreement*

36.     On July 11, 2011, Micromet entered into a Collaboration and License Agreement ("Collaboration and License Agreement") with Amgen under which the two parties agreed to

collaborate on the research of BiTE® antibodies against three undisclosed solid tumor targets and the subsequent development and commercialization of BiTE antibodies against up to two of these targets, to be selected by Amgen. Amgen paid an up-front payment of €10 million, or $14.5 million using the exchange rate as of the payment date, of which €4 million (or $5.7 million using the exchange rate as of the payment date) was an advanced payment to Micromet for research and development services to be performed by Micromet and the remaining €6 million (or $8.5 million using the exchange rate as of the payment date) was designated as the license fee relating to the license of BiTE antibody technology and know-how. Micromet has been primarily responsible for the generation and pre-clinical research of the BiTE antibodies, and Amgen will lead the clinical development, manufacturing, and commercialization of any products resulting from the collaboration. Micromet is eligible to receive up to a total of €342 million in milestone payments in connection with the development and sale of BiTE antibodies against the first target selected by Amgen, as follows: €7 million in pre-clinical milestones, €35 million in clinical milestones, and €300 million in milestones related to product approval and achievement of certain sales thresholds. Micromet is also eligible to receive an additional cash payment upon initiation of the second program, as well as milestones, royalties and development funding comparable to the first program. The combined potential payments to Micromet from both programs, excluding reimbursement of research and development costs, are approximately €695 million. Micromet has not recognized any milestone revenue under this Collaboration and License Agreement to date.

### *The Merger*

37.     On January 25, 2012, the Company and Amgen jointly announced that they had entered into a definitive agreement or the Proposed Merger for Amgen to acquire the outstanding

shares of Micromet for $11.00 per share in an all-cash tender offer. The press release stated in pertinent part:

> THOUSAND OAKS, Calif., and ROCKVILLE, Md., Jan. 26, 2012 /PRNewswire/ -- Amgen (NASDAQ:AMGN - News) and Micromet, Inc. (NASDAQ:MITI - News) today announced that the companies have entered into a definitive merger agreement under which Amgen will acquire Micromet, a biotechnology company founded in Germany with its research and development (R&D) center in Munich and headquarters in Rockville, Md., for $11 per share in cash. The transaction, which values Micromet at approximately $1.16 billion, was unanimously approved by both the Amgen and Micromet Boards of Directors.
>
> The acquisition includes blinatumomab, a Bispecific T cell Engager (BiTE) antibody in Phase 2 clinical development for acute lymphoblastic leukemia (ALL). Blinatumomab is also in clinical development for the treatment of non-Hodgkin's lymphoma (NHL), and could have applications in other hematologic malignancies.
>
> "The acquisition of Micromet is an opportunity to acquire an innovative oncology asset with global rights and a validated technology platform with broad potential clinical applications," said Kevin Sharer, chairman and CEO at Amgen. "Blinatumomab will serve as an important complement to our oncology pipeline and is representative of our corporate strategy, which is focused on developing and successfully commercializing therapeutics to treat patients with grievous illness."

38.    Concurrently with the execution of the Merger Agreement, the Company's directors, executive officers and certain of their affiliated funds have entered into tender and support agreements (the "Tender and Support Agreements"). These individuals collectively own 7,041,552 Shares (or 7.6% of all outstanding Shares) as of January 25, 2012. Including options and warrants to purchase shares that are exercisable within 60 days of January 25, 2012, such directors, executive officers and affiliated funds beneficially owned, in the aggregate, 12,986,468 Shares (or 13.2% of all outstanding shares after giving effect to the exercise of such options and warrants) as of January 25, 2012.

39.     Pursuant to the Tender and Support Agreements, the Company's directors have agreed to tender or cause to be tendered to Amgen in the Tender Offer all of their shares of Micromet common stock.  The shareholders in the Tender and Support Agreements also have agreed to vote, among other things, in favor of the approval of the Merger Agreement, to the extent any such shares have not been previously accepted for payment pursuant to the Tender Offer, and have given Amgen an irrevocable proxy to vote each such shareholder's shares of Micromet common stock to that effect.  In addition, such shareholders have agreed to waive any dissenters' rights they may have and have agreed not to take certain actions that Micromet is prohibited from taking under the Merger Agreement.

40.     The consideration to be paid to the class members is unfair and grossly inadequate because, among other things: (a) the intrinsic value of the stock of Micromet is materially in excess of $11.00 per share, giving due consideration to the possibilities of growth and profitability of Micromet in light of its business, earnings and earnings power, present and future; (b) the $11.00 per share price offers an inadequate premium to the public stockholders of Micromet; and (c) the $11.00 per share price is not the result of arm's-length negotiations but was fixed arbitrarily by certain insiders and Amgen to "cap" the market price of Micromet stock, as part of a plan for Amgen to obtain complete ownership of Micromet assets and business at the lowest possible price.  Indeed, the recent historical averages for Micromet's stock price demonstrate that the consideration being offered by Amgen is unfair and inadequate.

## THE PRECLUSIVE DEAL PROTECTION DEVICES

41.     In addition to agreeing to a sale of the Company at an unfair price, the Individual Defendants agreed to onerous deal protection devices in breach of their fiduciary duties to Micromet shareholders, which prevent a superior offer from being made for the Company.

11

42.     Specifically, Defendants agreed to: (i) a no-solicitation provision that prevents other buyers from having access to the Company's confidential information which information is necessary to formulate a bid, except under extremely limited circumstances; (ii) a matching rights provision that allows Amgen 4 business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay Amgen a termination fee of $40 million.  These provisions substantially limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of Micromet.

43.     The terms of the Merger Agreement considerably restrain the Company's ability to solicit or engage in negotiations with any third party regarding an acquisition proposal to the Company.  The circumstances under which Micromet's Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are restrictive and fail to provide an effective fiduciary out under the circumstances of the case.

44.     Thus, even if the Board were to receive a bid that appeared to be better than Amgen's offer, these provisions unreasonably constrain the Board's exercise of fiduciary responsibility to take measures to secure the best available transaction.  Consequently, this provision prevents the Board from exercising their fiduciary duties of "shopping" the Company and precludes an investigation into competing proposals unless, as a prerequisite, the majority of the Board first determines that the proposal is superior.

45.     Pursuant to the Merger Agreement, Micromet granted Amgen an option to purchase the number of authorized and unissued Company shares equal to an additional number of Micromet shares such that immediately after the issuance of those additional shares, Amgen

would own at least 90% of the outstanding shares of the Company (the "Top-Up Option"), in order to allow Amgen to effect a short-form merger pursuant to 8 Del. C. 253. The Top-Up Option provision is conditioned on Amgen obtaining a certain amount of shares. In other words, if Amgen acquires those currently outstanding shares in the Tender Offer, the Top-Up Option irrevocably grants Amgen the right to purchase enough new Micromet shares from the Company to bring Amgen's ownership above the necessary 90% threshold for a short form merger under Delaware law.

46. The Top-Up Option also provides a contractual right to Amgen to attain the status of a 90% stockholder so long as it acquires the requisite amount of the outstanding shares, and thereby avoid voting requirement of Section 251 and the fairness standard on controlling stockholders in transactions with the minority. The Top-Up and other preclusive deal protection devices constitute unfair and illegal abdications of directors' authority and unfair and inequitable evasion of stockholder rights.

47. The aggregate purchase price payable for the shares acquired through the Top-Up Option will be determined by multiplying the number of shares purchased through the Top-Up Option by the offer price. Such purchase price may be paid by Amgen, at its election, either (i) entirely in cash, (ii) by payment in cash of the aggregate par value of the shares and payment of the balance by executing and delivering to the Company a promissory note (with full recourse to Amgen) having a principal amount equal to the difference between the purchase price and the aggregate par value of the shares or (iii) any combination thereof. Any such promissory note shall bear interest at the applicable federal rate as determined for U.S. income tax purposes, shall mature on the first anniversary of the date of execution and delivery of such promissory note and may be prepaid at any time without premium or penalty; provided, however, that upon any event

13

of default, all principal and accrued interest thereunder shall immediately become due and payable.

## THE 14D-9 PROXY PROVIDES INSUFFICIENT INFORMATION FOR REASONABLE SHAREHOLDERS TO DECIDE WHETHER TO TENDER THEIR SHARES

48.     The Schedule 14D-9 fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to tender their shares in the Proposed Merger.  In particular, the 14D-9 fails to disclose a description regarding the following:

(a)     in 2009, the rationale for the Board's determination that it was in the best interests of Micromet to retain an investment bank to advise the Board with respect to its takeover preparedness and potential responses to any unsolicited acquisition proposals and stockholder activism;

(b)     why on June 15, 2010 Micromet entered into a confidentiality agreement with Amgen to discuss a potential collaboration relating to the use of Micromet's BiTE technology against solid tumor cancers;

(c)     during the remainder of 2010, the substance of discussions at the meetings concerning the business development and research and development functions of both organizations to discuss a potential collaboration whereby an outline for a collaboration was developed;

(d)     between January and June, 2011, the sum and substance of the discussions taking place amongst Micromet and Amgen relating to the potential collaboration on new BiTE antibodies;

14

(e)     during July 2011, the reasons provided and/or rationale thereto, if any, by representatives of Goldman Sachs & Co. ("Goldman Sachs") to  Mr. David Piacquad, Vice President, Strategy and Corporate Development at Amgen, that the Board was not interested in a transaction at that price level (of $9.00 per share);

(f)     on August 1, 2011, the type of additional due diligence Amgen sought for purposes of a transaction with Micromet so that they could more fully understand the value of the Company;

(g)     the sum and substance of the Board's discussions concerning other potential strategic parties who would potentially be interested in, and were capable of, acquiring Micromet whereby the Board resolved to contact Company A, with whom the Company had an existing relationship, to gauge interest;

(h)     the sum and substance of Mr. Hale's discussions with Dr. Perlmutter, on or about September 1, 2011, whereby he indicated that he was disappointed that Amgen was unwilling to raise their offer price following the diligence meeting;

(i)     the reasons provided, if any, on or about September 28, 2011, to Dr. Itin or anyone else at Micromet, by Company A that it was not interested in pursuing a transaction with Micromet at this time;

(j)     the basis for the Board, between October 4-6, 2011, discussing going back to Amgen at $12.00 per share and authorizing Goldman Sachs to communicate to Amgen that the Board might consider engaging in discussions at a much higher price than $9.00 per share;

(k)     the reasons, if any, on or about October 12, 2011, that the Board approved the terms of the retention of Goldman Sachs to serve as the financial advisor to the Company in connection with a potential sale of the Company;

(l)     the reasons provided, if any,  as to why Mr. Sharer sent a letter to Mr. Hale on or about October 28, 2011 indicating that Amgen was willing to increase the price in its proposal to a fixed amount equal to $9.00 per share in cash plus a contingent value component paying up to $3.00 more per share in $1.00 increments contingent on the achievement of certain commercial sales and regulatory milestones for blinatumomab if they occurred within certain time periods extending out to 2017;

(m)     the reasons provided, if any, why on October 30, 2011, the Board rejected the proposal received from Amgen and the potential value of the contingent value component of such proposal and authorized Goldman Sachs to convey its position to Amgen;

(n)     on or about December 21, 2011, the reasons provided, if any, Mr. Sharer sent a letter to Mr. Hale indicating that Amgen was willing to increase the price in its proposal to a fixed amount equal to $10.75 per share in cash;

(o)     the sum and substance of the Board's discussions concerning the revised offer and a process for contacting other potential strategic buyers;

(p)     the reasons that management requested an update to the Company's projections and that Goldman Sachs update its financial analysis prior to the Board meeting on January 2, 2012;

(q)     on or about January 3, 2012, the reasons or rationale for Mr. Hale indicating that the Board would be willing to work toward a transaction and work with Amgen on due diligence if Amgen would raise its price to $11.00 per share;

(r)     the reasons or rationale provided, if any, why Company B had declined to submit a proposal to acquire Micromet;

16

(s)     the terms of the term sheet for a collaboration for blinatumomab received by Micromet from a company that was not one of the seven potential strategic parties contacted by Goldman Sachs on Micromet's behalf;

(t)     the reasons, if any, why on or about January 23, 2012, the Board decided to request that Amgen pay $11.50 per share;

(u)     the reasons for not considering a market auction and if it was considered why this approach was rejected;

(v)     whether the Board considered any member of the Board to have material conflicts of interest or conducted any inquiry to determine if any such conflicts existed; and

(w)     why the Proposed Merger was structured as a tender offer and whether the Board considered any alternative deal structures.

49.    The 14D-9 fails to disclose the Company's complete projections and to define the term unlevered free cash flows.

50.    The 14D-9 also fails to disclose material information concerning the underlying methodologies, key inputs and multiples relied upon and observed by Goldman Sachs, the Company's financial advisor, so that shareholders can properly assess the reliability of the various analyses performed by Goldman Sachs and relied upon by the Board in recommending the Proposed Merger.  In particular, the Schedule 14D-9 is deficient as follows:

(a)     in the Goldman Sachs Illustrative Discounted Cash Flow Analysis the 14D-9 fails to disclose: (i) all line items that were used in calculating the Company's free cash flows; (ii) why Goldman Sachs uses the present values of the free cash flows from 2012 to 2025 by discounting such amounts at rates ranging from 13.5% to 16.5%; and (iii) why Goldman Sachs calculates the present value of the free cash flows beyond 2025 by calculating terminal

values based on based on perpetuity growth rates ranging from 1.0% to 5.0% based on the selected publicly traded companies analysis; (iv) how Goldman Sachs defines weighted average cost of capital; and (v) the amount of Micromet's net operating loss carryforwards used in the Illustrative Discounted Cash Flow Analysis, if any;

        (b)     in the Goldman Sachs Selected Transactions Analysis the 14D-9 fails to disclose: (i) the parameters (including operational and/or financial characteristics) used by Goldman Sachs in determining the selected companies used; (ii) the 14D-9 fails to disclose whether the transactions reflect a change in control and therefore a premium; and (iii) the respective premiums for each of the transactions.

## THE COMPANY'S FINANCIAL ADVISOR IS CONFLICTED

51.    It is extraordinarily imprudent to accept and rely upon advice as to the fairness of the consideration being paid to shareholders under the Proposed Merger from an investment banker more motivated to ensure that the Tender Offer is accepted than that Micromet's Board has fulfilled its obligations to Company shareholders to engage in a process that allows them to receive an objective, independent opinion as to fair value.

52.    In connection with Goldman Sachs's services as the financial advisor to the Company, Micromet has agreed to pay Goldman Sachs a transaction fee of approximately $15 million, all of which is payable upon the closing of the Offer.  In addition, Micromet has agreed to reimburse Goldman Sachs for its reasonable out-of-pocket expenses incurred in connection with its engagement and to indemnify Goldman Sachs against certain liabilities that may arise out of its engagement.

53.    Goldman Sachs has performed various investment banking and financial services for both the Company and Amgen in the past, and expects to perform such services in the future,

and has received, and expects to receive fees for such services.  Specifically, Goldman Sachs acted as financial advisor to the Company in connection with, and participated in certain of the negotiations leading to, the Proposed Merger.  Goldman Sachs has provided certain investment banking services to the Company and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as lead manager on a follow-on equity offering of the Company's common stock in January 2010.  Goldman Sachs also has provided certain investment banking services to Amgen and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as senior co-manager with respect to the public offering of Amgen's 5.75% Senior Notes due 2040 (aggregate principal amount $700,000,000) and 4.50% Senior Notes due 2020 (aggregate principal amount $300,000,000) in March 2010; as joint book-runner on a public offering of Amgen's 3.45% Senior Notes due 2020 (aggregate principal amount $900,000,000) and 4.95% Senior Notes due 2041 (aggregate principal amount $600,000,000) in September 2010; as senior co-manager on a public offering of Amgen's 5.65% Senior Notes due 2042 (aggregate principal amount $1,250,000,000) and 4.10% Senior Notes due 2021 (aggregate principal amount $1,000,000,000) and 2.30% Senior Notes due 2016 (aggregate principal amount $750,000,000) in June 2011; as senior co-manager on a public offering of Amgen's 5.15% Senior Notes due 2041 (aggregate principal amount $2,250,000,000) and 3.875% Senior Notes due 2021 (aggregate principal amount $1,750,000,000) and 1.875% Senior Notes due 2014 (aggregate principal amount $1,000,000,000) and 2.50% Senior Notes due 2016 (aggregate principal amount $1,000,000,000) in November 2011; as co-manager on a public offering of Amgen's 4.375% Senior Notes due 2018 (aggregate principal amount €550,000,000) and 5.50% Senior Notes due 2026 (aggregate

principal amount £475,000,000) in December 2011; and as a lender in Amgen's $2,500,000,000 Revolving Credit Facility due 2016 since December 2011.  During the two-year period ended January 25, 2012, the Investment Banking Division of Goldman Sachs has received compensation for services provided to Amgen and its affiliates of approximately $5 million. Goldman Sachs may also in the future provide investment banking services to the Company, Amgen and their respective affiliates for which the Investment Banking Division of Goldman Sachs may receive compensation.

54.    Viewing the data and methodology employed by Goldman Sachs in generating its fairness opinion included with the 14D-9, together with the revelation of the contingent fee structure which is all payable only if the Proposed Merger is consummated, underscores that each member of the Board has failed to fulfill his or her obligations with the care an ordinarily prudent person in a like position would have used under similar circumstances.

## DEFENDANTS' FIDUCIARY DUTIES

55.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of Micromet and owe Plaintiff and the other members of the Class a duty of good faith, fair dealing, loyalty and full and candid disclosure.

56.    By virtue of their positions as directors and/or officers of Micromet, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Micromet to engage in the practices complained of herein.

57.    Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with due care, including reasonable inquiry, as would be expected of an ordinarily prudent person. In a situation where the directors of a

publicly-traded company undertake a transaction that may result in a change in corporate control, Delaware law imposes the obligation on the directors to take all steps reasonably required to maximize the value that shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision. To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)      adversely affects the value provided to the corporation's shareholders;

(b)      contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)      discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

(d)      otherwise adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

## COUNT I

### Against Brigham Exploration and The Individual Defendants for Violation of §14(e) of the Securities Exchange Act of 1934

58.      Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

59.      This claim is brought by Plaintiff against Defendants for violations of §14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e), and SEC rules promulgated thereunder.

60.      The Defendants named in this claim disseminated the false and misleading 14D-9 which they knew or should have known was misleading in that it contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

21

61.    The 14D-9 was prepared and disseminated by Defendants named in this claim.  It misrepresented and/or concealed certain material information concerning the nature of the process involved in the Tender Offer and the true value of the Company.  In so doing, they made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(e) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

62.    The Defendants named in this claim issued the 14D-9, which was materially false and misleading.  The Defendants were aware of and/or had access to the true facts concerning the process involved in selling the Company and the true value of the Company.  However, notwithstanding this knowledge, each of the Defendants purported to and/or approved the dissemination of the false 14D-9.

63.    Defendants permitted Tender Offer in an effort to aggrandize their own financial position and interests at the expense of and to the detriment of Brigham Exploration shareholders.  By relying on the false and misleading statements in the 14D-9, the majority of the shareholders who are unaware of untruths, and relied thereon, were directly and proximately harmed by the Defendants' wrongful conduct.  By reason of such misconduct, the Defendants are liable pursuant to §14(e) of the 1934 Act and SEC rules promulgated thereunder.

## COUNT II
### Claim for Breach of Fiduciary Duties

64.    Plaintiff repeats and realleges each allegation set forth herein.

65.    The Individual Defendants have violated their fiduciary duties of care, good faith, loyalty and candor owed under applicable law to the public shareholders of Micromet and have placed the interests of insiders ahead of the interests of Micromet's shareholders.

66.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, care and candor owed to the shareholders of Micromet because, among other reasons:

(a)    they failed to properly value Micromet;

(b)    they failed to take steps to maximize the value of Micromet to its public shareholders and they took steps to avoid competitive bidding, and to give Amgen an unfair advantage, by, among other things, failing to adequately solicit other potential acquirors or alternative transactions;

(c)    they failed to properly value Micromet and its various assets and operations;

(d)    they failed to provide shareholders with the material information necessary to make an informed decision as to whether or not to vote in favor of the Proposed Merger;

(e)    they erected unreasonable barriers to other third-party bidders.

67.    By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and as part of a common plan and scheme and in breach of their fiduciary duties of loyalty, good faith and due care to Plaintiff and the other members of the Class, have failed to adequately inform themselves about the true value of the Company and, by agreeing to the Proposed Merger with Amgen, will unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Micromet.

68.    Micromet shareholders will, if the Proposed Merger is consummated, be deprived of the opportunity for substantial gains which the Company may realize.

69.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other Micromet public stockholders.

70.     As a result of the actions of Defendants, Plaintiff and the other members of the Class have been and will be damaged in that they have not and will not receive their fair proportion of the value of Micromet's assets and businesses and will be prevented from obtaining appropriate consideration for their shares of Micromet common stock.

71.     Unless enjoined by this Court, the Defendants will continue to breach their fiduciary duties owed to Plaintiff and the other members of the Class, and may consummate the Proposed Merger which will exclude the Class from its fair proportionate share of Micromet's valuable assets and businesses, all to the irreparable harm of the Class, as aforesaid.

72.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## COUNT III

### Claim for Aiding and Abetting the
### Individual Defendants' Breaches of Fiduciary Duty

73.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74.     Amgen has knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  Amgen is also an active and necessary participant in the Individual Defendants' plan to consummate the Proposed Merger on terms that are unfair to Micromet shareholders, as Amgen seeks to pay as little as possible to Micromet shareholders.

75.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands relief in their favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as a representative of the Class;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Merger, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

C.     Enjoining Defendants from consummating the Merger Agreement and Proposed Merger unless and until they provide to Micromet shareholders all material information in connection with the proposed transaction;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.     Granting such other and further relief as this Court may deem just and proper.

DATED:  February 8, 2012                    *Respectfully submitted,*


                                            _____/s/_____
                                            Thomas J. Minton – No. 03370
OF COUNSEL:                                 Goldman & Minton, P.C.
                                            1500 Union Avenue, Suite 2300
BULL & LIFSHITZ, LLP                        Baltimore, Maryland 21211
18 East 41st Street                         Telephone: 410-783-7575
New York, NY 10017
Tel: (212) 213-6222                         *Counsel for Plaintiff and the proposed class*
Fax: (212) 213-9405

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

_____/s/_____
Thomas J. Minton – No. 03370